NOT DESIGNATED FOR PUBLICATION

No. 123,709

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TERRY BOYD CANFIELD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; JOHN F. BOSCH, judge. Opinion filed February 4, 2022. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*David Lowden*, deputy county attorney, *Barry R. Wilkerson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., BRUNS and WARNER, JJ.

PER CURIAM: To successfully withdraw a plea before sentencing, one must show good cause. Terry Boyd Canfield timely appeals the district court's denial of his presentence motion to withdraw his no-contest pleas to robbery and aggravated battery. Canfield argues the district court erred in failing to find good cause to allow him to withdraw his pleas because evidence existed suggesting he was innocent of the crimes. After a thorough review of the record, we find no error in the district court's decision. Accordingly, we affirm.

1

On February 14, 2018, Riley County police officers responded to a report of an unknown man entering a residential home. Police Sergeant Brandon Tapp contacted a suspect, Stephen Garner, within a few minutes after the victim called the police about the incident. The State pursued charges against Garner.

Before Garner's trial, the State received DNA and fingerprint evidence identifying Canfield's DNA on a bottle and a mug as well as a fingerprint from within the victim's home. The State dismissed the charges against Garner. The State charged Canfield with aggravated burglary in violation of K.S.A. 2017 Supp. 21-5807(b)(1); robbery in violation of K.S.A. 2017 Supp. 21-5420(a); and aggravated battery in violation of K.S.A 2017 Supp. 21-5413(b)(1)(C). Canfield pled not guilty.

Canfield initially requested a jury trial but failed to appear for trial. The parties then decided to resolve the matter through a plea agreement. Canfield agreed to enter pleas of no contest to robbery and aggravated battery. In exchange for successful pleas, the State agreed to dismiss the aggravated burglary charge with prejudice and agreed not to file any additional charges that could have been filed in this case. The parties agreed to recommend the district court impose the aggravated sentence for each count and for each sentence to run consecutive. Canfield agreed not to seek probation.

At the plea hearing held June 17, 2020, the district judge read the terms of the plea agreement into the record. The district judge confirmed Canfield had read the plea agreement, understood the constitutional rights he would be waiving by entering a plea, and had sufficient time to discuss the implications and impact of his plea with his attorney. Canfield understood how the district court would treat the factual statement provided by the State to find him guilty upon his plea and further confirmed his plea was

being entered freely and voluntarily, with no promises or inducement being made to persuade him to plead other than what was provided in the plea agreement.

The district court also had the following discussion with Canfield:

"THE COURT:  So do you understand that actually I'm not bound by the Plea Agreement, that I can enter any lawful sentence?

"THE DEFENDANT:  Yeah.

"THE COURT:  And in this case this appears that you're really getting the benefit of the Plea Agreement up front by dismissal of that last charge, and I wouldn't have any control over that?

"THE DEFENDANT:  Okay.

"THE COURT:  Okay. So Mr. Canfield, are you telling the Court that you're entering this plea freely and voluntarily, and of your own free will?

"THE DEFENDANT:  Yes.

"THE COURT:  And Mr. Canfield, you're represented by [counsel], who is there with you at the jail. Have you discussed your case fully, and explained everything that you know about it to him?

"THE DEFENDANT:  Yes.

"THE COURT:  Okay. Have you had full and ample opportunity to consult with him regarding the charges against you?

"THE DEFENDANT:  Yes, ma'am.

"THE COURT: And has he explained and discussed with you the facts and elements of the case that the prosecution must prove, and any defenses that might be available for those charges?

"THE DEFENDANT:  Yes, ma'am.

"THE COURT:  And are you satisfied with [your counsel] and the way he's represented you in the case?

"THE DEFENDANT:  Yes."

Canfield then pled no contest to robbery and aggravated battery. The State proffered the evidence it would present to prove these crimes, including DNA evidence placing Canfield in the victim's home. The district court then explained:

> "Mr. Canfield, the Court finds that you are now alert and intelligent. That you understand the nature of the charges against you and that you appreciate the consequences of pleading no contest. That you understand by pleading no contest you waive each of those constitutional rights of a defendant that I have already mentioned to you. That the facts the prosecution is prepared to prove are sufficient to sustain the plea, and that there is a factual basis for your plea.
> "The Court further finds that your decision to plead no contest is freely, voluntarily and intelligently made. That you've had the advice and counsel of a lawyer, with whom you say you are satisfied, and you were mentally responsible at the time of the commission of the offenses, and that you are competent at this time to enter the plea."

Before sentencing, Canfield filed a motion to withdraw his pleas, claiming he had poor communication with his attorney and he did not make his pleas knowingly and voluntarily. Canfield also claimed actual innocence as the State had first charged Garner, who the victim had identified. Canfield contended the DNA and fingerprint evidence suggesting he was in the victim's home was found on inanimate objects and could have other explanations. The district court appointed Canfield new counsel and continued the sentencing hearing.

Canfield appeared with new counsel to present his presentence motion to withdraw pleas. Canfield testified he felt communication with his prior counsel was lacking and he was not fully satisfied with his prior counsel's representation. Canfield acknowledged the State's DNA evidence against him but claimed he was innocent. Canfield testified that as early as March 2019, he was aware of the State's DNA evidence against him and also knew the State first prosecuted Garner for the crimes.

Canfield admitted he failed to appear for his jury trial and ultimately stipulated he signed the plea agreement and the acknowledgment of rights. Canfield also admitted the district judge spoke with him at his plea hearing, and he had answered the district judge's questions truthfully.

Even so, Canfield explained:

"I wasn't happy with the counsel to begin with, and I was pursuing my own counsel, and then we—I was having a hard time getting a new counsel, and at that time I bonded out and was in the streets pursuing, you know, paying for my own counsel, and I got in an accident and couldn't work, and it messed everything up, and then whenever I came back I was—they were proceeding straight to trial with the same attorney, and I just kind of— you know, I got pushed into, you know, taking a deal I didn't want. And I don't know, I just feel like I didn't have the best counsel."

Canfield claimed he was not thinking straight but knew what he was pleading to and went on to claim he felt taken advantage of by agreeing to the highest sentences and agreeing to have the sentences run consecutive. He acknowledged, "I can't say that they took advantage of me by dropping a charge, obviously, but that's not the part that I'm saying was—was used against me." Canfield ultimately abandoned before the district court his claim of ineffective counsel and solely maintained his claim of actual innocence in his motion to withdraw pleas.

Canfield's original defense counsel testified at the motion hearing, explaining he had been a licensed attorney for nine years and was familiar with high level felony cases. Defense counsel testified he presented an offer to the State, which the State rejected and countered. Defense counsel presented the State's counteroffer to Canfield, which he chose to reject. Canfield later approached defense counsel and conveyed his desire to present another counteroffer to the State, which counsel did.

5

Defense counsel also testified there was nothing during the plea hearing causing him to believe Canfield's pleas were not fairly and understandingly made or that Canfield had been misled, coerced, mistreated, or unfairly taken advantage of. The only time there may have been issues with communication occurred when Canfield failed to appear for trial. Defense counsel did not recall Canfield discussing his desire to obtain new counsel until after he entered his pleas. During the hearing, the district judge realized she may have had knowledge of the case, without being involved, when she worked at the Riley County Attorney's Office. The hearing was continued for a transcript of the plea hearing to be completed and for another judge to preside over the case.

At the hearing on November 19, 2020, with a different district judge presiding, Garner's defense counsel testified video surveillance showed Garner in a convenience store at the time of the incident. The State also had evidence of a police K-9 tracking Garner from the victim's home to the gas station. The victim had identified Garner, though he was the only individual the police had detained. In preparation for trial, the parties had received fingerprint and DNA evidence from the Kansas Bureau of Investigation ruling Garner out as a suspect, and the State had dismissed its charges against Garner. The hearing was again continued for the judge to review transcripts from the prior proceedings.

At the next hearing in December 2020, the State again asserted Canfield was aware Garner was the original suspect charged and still chose to enter his pleas. The district court found:

- The State did not withhold any facts about the initial charges against Garner;
- Canfield and his attorney both had the information about Garner from the beginning of the case;
- No new evidence had been disclosed since Canfield entered his pleas; and
- Canfield was fully aware of all of the facts when he entered his pleas.

6

The district court noted it provided Canfield with conflict-free counsel after Canfield complained about his first defense attorney. The district court, upon analyzing the good cause factors in *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006), found:

- Canfield's trial counsel was competent;
- Canfield was not misled, coerced, mistreated, or unfairly taken advantage of;
- Canfield was not rushed to enter the plea agreement;
- Canfield's pleas were knowingly, voluntarily, and intelligently made; and
- Canfield's motion to withdraw his pleas should be denied because he failed to establish good cause.

Canfield was sentenced to 51 months' imprisonment for robbery, with a consecutive term of 13 months' imprisonment for aggravated battery, for a total controlling sentence of 64 months' imprisonment.

ANALYSIS

*Canfield failed to establish good cause to withdraw his pleas prior to sentencing.*

Canfield now limits his argument to a claim the district court abused its discretion when it denied his presentence motion to withdraw his pleas based on a claim of actual innocence. He asserts considerable evidence suggested another individual committed the crimes and, under K.S.A. 2020 Supp. 22-3210(d)(1), a no-contest plea may be withdrawn before sentencing "for good cause shown and within the discretion of the court." When determining whether a defendant has shown good cause, a district court should consider the *Edgar* factors: (1) Was the defendant represented by competent counsel; (2) was the defendant misled, coerced, mistreated, or unfairly taken advantage of; and (3) was the plea fairly and understandingly made? 281 Kan. at 36. Other non-*Edgar* factors that

7

could impact a plea withdrawal should not be ignored. *State v. Frazier*, 311 Kan. 378, 381, 461 P.3d 43 (2020).

Canfield now argues his claim of actual innocence is the only factor the district court should have considered. A district court may consider all relevant factors, and a claim of innocence may support good cause. *State v. Garcia*, 295 Kan. 53, 63, 283 P.3d 165 (2012). The State, however, correctly points out the district court already acknowledged there was evidence suggesting another individual committed the crimes. Canfield was aware of the evidence related to Garner, but he was also aware of the evidence linking himself to the crimes, including fingerprint and DNA evidence suggesting he was inside the victim's home, before entering his pleas.

When the district court denies a defendant's motion to withdraw a plea before sentencing, the defendant must establish before us how the district court abused its discretion in denying the motion. "A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. [Citation omitted.]" *Frazier*, 311 Kan. at 381. "Appellate courts do not reweigh the evidence or assess witness credibility. Instead, appellate courts give deference to the trial court's findings of fact. [Citation omitted.]" *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011). Canfield bears the burden to establish the district court erred in denying his presentence motion to withdraw pleas. See *State v. Schow*, 287 Kan. 529, 541, 197 P.3d 825 (2008). Further,

> "[e]ntry of a plea of guilty or nolo contendere necessarily implies acknowledgment by all concerned—the defendant, the State, and the court—that a jury could go either way and that a risk-benefit analysis has taken place on both sides. The prosecution and the defense have something to gain and something to lose in any plea bargain." *State v. Green*, 283 Kan. 531, 547, 153 P.3d 1216 (2007).

8

"[A] defendant should not get relief from a plea decision simply because he or she determines, in hindsight, that it was not the most intelligent course of action . . . ." *Schow*, 287 Kan. at 542.

Canfield has not established the district court's decision to deny his presentence motion to withdraw his pleas was based on an error of fact or law or was otherwise arbitrary, fanciful, or unreasonable. The record reflects the district court considered the circumstances giving rise to Canfield's claim of actual innocence, and its decision reflects Canfield knew about the State's prior charges against Garner before Canfield entered his pleas. The district court at the time of Canfield's pleas proceeded methodically with him to verify he was entering his pleas freely, voluntarily, and understandingly. The plea agreement was fairly entered into by the State and Canfield; each had something to gain and something to lose from doing so. And the parties each received their respective contemplated benefits by accepting the corresponding burdens of their agreement.

Canfield has not carried his burden to show the district court abused its discretion by denying his presentence motion to withdraw his pleas. The district court was within its statutory authority and sound discretion to deny Canfield's presentence motion to withdraw his pleas.

Affirmed.